DOUCET, Judge.
Plaintiff Elden L. Credeur, brought this suit to evict defendant, Credeur Credit Corporation, from a building that he had leased to defendant. After a trial, the district court rendered judgment in favor of defendant, dismissing his suit. He appeals.
On August 4, 1978, plaintiff leased a building in Crowley, Louisiana to defendant for a term of thirty-six months, beginning on August 1,1978 and ending on September 1, 1981. The written agreement provided for monthly rent of $350.00, payable on the first of each month.
At the time that the lease was executed, plaintiff was the president of Credeur Credit Corporation. He continued serving in that capacity until March 20, 1979, when he resigned. It was established at the trial that during the time that plaintiff was president of the corporation, the rent was never paid by the first of the month. It was paid fifteen to twenty days later. In his capacity as president, plaintiff would issue a check for $350.00, payable to the Crowley Building & Loan Association. The money was applied to plaintiff’s personal debt to that institution under a bond for deed agreement.
When plaintiff resigned on March 20, 1979, the March rent had not been paid. It was paid on April 3, 1979 by a check issued to the Crowley Building & Loan Association. On April 20, 1979, plaintiff notified defendant through his attorney that the April rent had not been paid and ordered defendant to vacate the leased premises. Defendant’s tender of the rent to plaintiff on April 23, 1979 was refused, as were the tenders made on the first of each of the following months. This suit was brought on May 23, 1979.
The legal principles applicable to this kind of a case were summarized in the following excerpt from the opinion of this court in Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App. 3rd Cir. 1975):
“Louisiana Civil Code Art. 2710 declares in part that: ‘The lessee is bound . . (2) To pay the rent at the terms agreed upon.’ Civil Code Art. 2712 further provides that “The lessee may be expelled from the property if he fails to pay the rent when it becomes due.’ The summary procedure for such eviction is provided for in the Louisiana Code of Civil Procedure, Art. 4701 et seq.
“There is, however, a well established general rule in the jurisprudence of this state that where a lessor-owner customarily accepts rental payments after the date on which they are due, such ‘custom’ by acquiescence of the parties, has the effect of altering the original contract in respect to punctuality of rent payments. Briede v. Babst, 131 La. 159, 59 So. 106 (1912); Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926 (1908); Raytheon Manufacturing Company (Equipment Sales Division) v. Jack Neilson, Inc. 196 So.2d 675 (La.App. 4th Cir. 1967); Rex Credit Co. v. Kirsch, 4 So.2d 797 (La.App.Orl.Cir. 1941).
“The basis for such a rule seems to be the prevention of a lessor-owned ‘misleading or lulling a tenant into a false sense of security’ by accepting late rent payments for an extended period, without demand for punctuality, and then at a future date of his own choosing cancel the lease once payment becomes overdue. Briede v. Babst, supra; Goldblum v. Harden, 188 So.2d 630 (La.App. 4th Cir. 1966); Boulevard Investment Corp. v. Boulmay, 79 So.2d 917 (La.App.Orl.Cir. 1953).
*928 “When such ‘indulgences’ on the part of the lessor are found to have created the abovementioned ‘custom’, the landlord’s right to strict enforceability of the lease rental provisions is considered waived, and in order to hold the lessee to the explicit terms of the lease, advance notice must be given of the lessor’s intention in the future to strictly enforce the lease provisions and collect the rent as due. Standard Brewing Co. v. Anderson, supra; Jones v. Paul, 254 So.2d 915 (La. App. 1st Cir. 1971); Leinhardt v. Marrero Land and Improvement Association, Ltd., 137 So.2d 387 (La.App. 4th Cir. 1962).
“The foregoing rules, however, have no application where the lessor has made frequent and unsuccessful demands for the rent or where acceptance of tardy payments is because of ‘unwilling and forced' indulgence on the lessor’s part. Wall v. Green, 228 La. 59, 81 So.2d 769 (1955); Redon v. Armstrong, 215 La. 307, 40 So.2d 474 (1949); Briede v. Babst, supra, Raytheon Manufacturing Company (Equipment Sales Division) v. Jack Neilson, Inc., supra; Farmers Gas Company, Inc. v. LaHaye, 195 So.2d 329 (La.App. 3rd Cir. 1967); Goldblum v. Harden, supra; Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corporation, 177 So.2d 406 (La.App. 4th Cir. 1965); Maestri v. Nall, 145 So. 128 (La.App.Orl.Cir. 1933); Chapman v. Burke, 145 So. 560 (La.App.Orl. Cir. 1933).
See also, Quality Materials of Tangipahoa v. Labarama, 361 So.2d 1285 (La.App. 1st Cir. 1978), writ denied, 363 So.2d 923 (La.1978), and Lee Lumber Company, Ltd. v. International Paper Company, 345 So.2d 212 (La. App. 3rd Cir. 1977), writ denied, 347 So.2d 503 (La. 1977).
Applying those principles to the case at hand, we find that there was an established custom of accepting late payments, which had the effect of altering the terms of the original contract with regard to the punctuality of the rent payments. We find no merit in plaintiff’s argument that his resignation as president of the corporation terminated that effect. The corporation has a legal personality that is separate and distinct from plaintiff’s. The other officers and directors and the office staff of the corporation had knowledge of the custom. The corporation was therefore entitled to rely on it until such time as it received advance notice from plaintiff of his expectation for prompt payment of the rent.
We find no evidence of any notice being given prior to the time plaintiff ordered defendant to vacate the leased premises. Since that time, defendant has promptly tendered the rent on the first of each month. Under these circumstances, we find no error in the trial court’s dismissal of plaintiff’s suit.
For these reasons the judgment appealed by plaintiff is affirmed. All costs of this appeal are assessed against plaintiff.
AFFIRMED.