# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2009

Charles R. Fulbruge III
Clerk

No. 08-30650

SCHWEGMANN FAMILY TRUST NO. 2

Plaintiff-Appellee

v.

JOHN HANCOCK LIFE INSURANCE COMPANY, formerly known as
John Hancock Mutual Life Insurance Company

Third Party Defendant-Appellee

v.

TOYS R US INC., its subsidiaries & affiliates

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-2478

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges .

PER CURIAM:[*]

Defendant-Appellant Toys "R" Us – Delaware, Inc., formerly known as
Toys "R" Us, Inc., ("Toys") appeals the district court's grant of summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

judgment in favor of Appellee, Schwegmann Family Trust No. 2 ("Schwegmann"), enforcing the terms of the lease entered into between Schwegmann and Toys. The district court held that the lease specifically addressed the circumstances at issue—concerning the effects of Hurricane Katrina on the leased property—and thus held the contrary provisions contained in the Louisiana Civil Code were inapplicable. For the following reasons, the judgment of the district court is affirmed.

I.

In 1992, Toys entered into a twenty-five year land lease with Schwegmann for property located in the eastern section of New Orleans, Louisiana. Pursuant to the lease, Toys constructed a building on the leased property from which it operated a toy store. On August 29, 2005, Hurricane Katrina struck the area, damaging the store located on the leased property and the surrounding area. Toys cleared out the contents of the building and discontinued payment of rent.

On May 11, 2006, Schwegmann sued Toys in district court to enforce the lease and collect past due rent.[1] Toys answered, filed a counterclaim for Schwegmann's failure to maintain its lease obligations, and then filed a third party demand against John Hancock Mutual Insurance Company ("John Hancock"), Schwegmann's mortgagee. On May 16, 2007, Schwegmann filed a motion for summary judgment seeking enforcement of the terms of the lease. On June 12, 2007, Toys filed a cross-motion for summary judgment seeking to dissolve the lease pursuant to Louisiana Civil Code Article 2715. On March 17, 2008, the district court granted Schwegmann's motion and denied Toys' cross-motion, holding that the terms of the lease, rather than Article 2715, control the parties' obligations. The district court's order decided the issue of liability only, leaving open the extent and amount of any damages. The

---

[1] Schwegmann is a Louisiana trust and Toys is a Delaware corporation. This case was brought pursuant to the district court's diversity jurisdiction. 28 U.S.C. § 1332.

judgment was certified for interlocutory appeal and further trial court proceedings were stayed pending appeal. Toys now appeals the order of the district court granting summary judgment in favor of Schwegmann.

## II.

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 (5th Cir. 2007). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, this Court must draw all reasonable inferences in favor of the responding party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

## III.

Toys argues that the lease agreement, governed by Louisiana law, should be dissolved pursuant to Louisiana Civil Code Article 2715 ("Article 2715"), which provides, in pertinent part, that where the thing leased is "partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired," and the impairment "was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease." La. Civ. Code art. 2715. Toys asserts that as result of Hurricane Katrina the leased property was "substantially impaired," and thus they are entitled to terminate the lease under Article 2715. Schwegmann counters that because the rules of the Civil Code only become applicable for filling any gaps in a contract, they are inapplicable here because the lease agreement had a provision addressing the responsibilities of the parties in the event a "fire or other casualty" damaged or destroyed the property.

Under Louisiana law, the rules of the Civil Code "become applicable for filling any gaps in the parties' agreement and for determining its overall validity

and effectiveness." La. Civ. Code art. 2668 cmt. (e). In *Tassin v. Slidell Mini Storage, Inc.*, 396 So. 2d 1261 (La. 1981), the Louisiana Supreme Court explained the role of the rules in the Civil Code when interpreting contracts:

> [T]he codal articles and statutes defining the rights and obliations (sic) of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between lessor and lessee when there is no contractual stipulation imposed in the lease. . . . Our jurisprudence is that the usual warranties and obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement of the parties as long as such waiver or renunciation does not affect the rights of others and is not contrary to the public good.

*Tassin*, 396 So. 2d at 1264. "In other words, the lease contract itself is the law between the parties; it defines their respective rights and obligations so long as the agreement does not affect the rights of others and is not contrary to the public good." *Carriere v. Bank of La.*, 702 So. 2d 648, 666 (La. 1996); *see also Cerniglia v. Napoli*, 517 So. 2d 1209, 1211 (La. Ct. App. 1987) ("[A]rticle [2697] is applicable only where there is no lease agreement to the contrary. In the present case the parties by adopting the fire clause clearly intended to avoid automatic termination of the lease in the event of destruction of the premises by a fire." (citation omitted)).

Therefore, if the lease agreement "waive[s] or otherwise provide[s] for" the situation covered by Article 2715, then the lease provision, and not Article 2715, should apply. Article 2715 provides:

> If, without the fault of the lessee, the thing is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances. If the lessor was at fault, the lessee may also demand damages.

If the impairment of the use of the leased thing was caused by circumstances external to the leased thing, the lessee is entitled to a dissolution of the lease, but is not entitled to diminution of the rent.

La. Civ. Code art. 2715. Schwegmann contends that § 12.02 of the lease covers the situation here, and obviates the need to look to the codal provisions. Section 12.02 states that:

In the event the whole or any part of the Demised Premises[2] shall, during the Lease Term, be damaged or destroyed by fire or other casualty . . . Tenant shall . . . commence and proceed with due diligence to repair, restore and/or rebuild the Demised Premises, or portions thereof, substantially to their condition and character immediately prior to such damage . . . .

The question posed here is whether § 12.02 of the lease provides for the situation at issue because Hurricane Katrina was a "casualty" that "damaged" the leased property. If § 12.02 does cover the instant situation, then the lease provision trumps Article 2715 and Schwegmann is entitled to continuation of the lease while Toys is obligated to repair the leased property as specified in § 12.02.

*Schwegmann Family Trust No.2 v. KFC National Management Co.*, No. 06-2447, 2007 WL 60971 (E.D. La. Jan. 5, 2007), which involved a substantially similar lease between KFC and Schwegmann, is instructive. In that case, KFC, like Toys, contended that its leased properties were "substantially impaired such that the properties were no longer fit for the express intended use of operating a Kentucky Fried Chicken restaurant" due to the effects of Hurricane Katrina and sought dissolution of its lease with Schwegmann via Article 2715 of the Louisiana Civil Code. *Schwegmann v. KFC*, 2007 WL 60971, at *2. The KFC lease contained a "destruction of premises" provision which provided that "[i]f

---

[2] The "Demised Premises" is defined in § 1.01 of the lease as the "Tenants Parcel and the Improvements" erected thereon.

the building upon the demised premises be damaged or rendered untenantable by fire or other casualty . . . Tenant shall . . . repair or replace said building." *Id.* at *3. The district court held that the lease provision addressed the rights and obligations of the parties in the event that the leased property was damaged by a casualty, and encompassed the effects on the property that occurred as a result of Hurricane Katrina. Therefore, the court held that Article 2715 did not apply and KFC was bound by the terms of the lease to repair or replace the building and continue the lease. *Id.* at *3–4.

Toys argues that even if the lease provides for a situation in which the premises are destroyed, it does not provide for a situation in which the use of the premises are "substantially impaired." Toys submitted an affidavit and report from a local demographer stating that the area around the store location at issue is no longer commercially viable because of decreased population and slow rebuilding in the area. Toys asserts that these changes to the business climate of the area are a "substantial impairment" that is not covered by § 12.02 of the lease.

Despite Toys' contentions, we hold that the lease is not silent as to the impairment alleged by Toys. First, § 12.02 of the lease addresses situations in which "the whole or any part of the Demised Premises" is "damaged or destroyed" by a "fire or other casualty." Under the Louisiana Civil Code, the words of a contract must be given their generally prevailing meaning. La. Civ. Code art. 2047. Hurricane Katrina was a casualty that damaged or destroyed the leased property in part. The ordinary meaning of the verb "damage" is "[t]o do or cause damage to; to hurt, harm, injure; now commonly to injure (a thing) so as to lessen or destroy its value." Oxford English Dictionary (2d ed. 1989). The verb "impair" means "[t]o make worse, less valuable, or weaker; to lessen injuriously; to damage, injure." *Id.* There is substantial overlap between the two concepts. Thus, the effects of Hurricane Katrina on the leased property,

6

including injuries which lessened its value, are squarely addressed by the lease and the lease should govern the rights of the parties. *See Tassin*, 396 So. 2d at 1269 (holding that "obligations imposed under the codal articles and statutes dealing with lease may be waived or otherwise provided for by contractual agreement"). Second, as in *Schwegmann v. KFC*, the lease "reflects that the parties did consider circumstances in which damage to the properties could make continuation of the lease no longer viable." 2007 WL 60971, at *4. Section 12.01 of the lease provides for termination of the lease if the property is destroyed or damaged in excess of a certain specified amount "during the last five (5) years of the Lease Term or during any renewal period." The damage here occurred prior to that five-year mark and, therefore, the provisions of §12.02 requiring repair and continuation of the lease, rather than termination provisions of § 12.01, apply.

Even if the lease did not address the impairment complained of by Toys—and thus Article 2715 governed—dissolution of the lease would still not be warranted because the "thing leased" has not been "substantially impaired" within the meaning of the statute. In *Meadowcrest Professional Building Partnership* v. *Toursarkissian*, a Louisiana court rejected the contention that negative changes in the business climate after Hurricane Katrina constituted a substantial impairment to a commercial lease under Article 2715. 1 So. 3d 555, 556 (La. Ct. App. 2008). The court stated that:

> [E]ven accepting defendant's assertion about the negative business climate as true, this is not the type of situation to which Art. 2715 applies. To rule otherwise would be to make the enforceability of leases dependent on the vagaries of the marketplace, and this we decline to do.

*Id*.; *see also Schwegmann v. KFC*, 2007 WL 60971, at *4 (noting that "changed economic and demographic conditions [in the surrounding neighborhood] do not make the leased land, itself, unsuitable for a retail

business"). Therefore, under Louisiana law, the impairment complained of by Toys does not constitute a substantial impairment and Toys is not entitled to dissolution of the lease under Article 2715.

IV.

Based on the foregoing analysis, the judgment of the district court is AFFIRMED.